**SECOND DIVISION**
**MILLER J.**
**RAY AND BRANCH, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2014**

# In the Court of Appeals of Georgia

A13A1153. TRAMMELL v. THE STATE.

MILLER, Judge.

Convicted of three counts of aggravated assault (OCGA § 16-5-21 (a)), Eddie Trammell appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the verdict and the trial court erred in denying his motion for directed verdict; (2) the State failed to prove venue; (3) the trial court erred in denying his motion for mistrial based on prosecutorial misconduct; and (4) he was denied effective assistance of counsel. Finding no error, we affirm.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh that evidence nor judge the credibility of the witnesses.

(Citations and punctuation omitted.) *Castillo v. State*, 288 Ga. App. 828 (655 SE2d 695) (2007).

So viewed, the evidence shows that William Marsh, Demonte Jackson, and Trammell were childhood friends who lived in the same neighborhood. Around 8:30 or 9:00 on the night of June 8, 2008, Jackson and Marsh arrived at Jackson's home in Marsh's car and saw Trammell outside. Jackson and Trammell got into a fist fight. After the fight ended, Jackson got back into Marsh's car and went to a party.

The party ended around midnight, and Marsh drove Jackson home. They pulled up in front of Jackson's house and Trammell called Marsh's cell phone. Trammell yelled at Jackson and told him he "had something" for Jackson when he saw him. Then, Jackson handed the phone to Marsh and Trammell yelled at Marsh. A gray or light-colored Jeep Cherokee then pulled up alongside Marsh's car. Trammell was in the passenger seat of the Jeep and he fired eight or nine shots at Marsh and Jackson. Jackson was shot in the forearm and a bullet grazed his nose. Marsh was shot five times, resulting in gunshot wounds to his buttocks and hip.

Since the engine was still running, Marsh hit the gas and tried to drive away. When the Jeep followed, Marsh called his uncle, Christopher Howard, and told him

2

that Jackson had been shot and he and Jackson were being chased by Trammell. Howard advised Marsh to drive to Howard's neighborhood, a few blocks from Jackson's home. In Howard's neighborhood, Marsh and Jackson abandoned their car in a cul-de-sac and separately ran on foot to Howard's house, which is located in Decatur.

After receiving the phone call from Marsh, Howard asked his wife to call police, then went outside and saw Marsh's car "flying down" the street. Howard got into his own car, drove down the hill to the cul-de-sac and pulled up alongside Marsh's abandoned car moments later. Howard walked over to the car, saw that it was covered in blood, and heard gunfire. Howard then saw the gray Jeep Cherokee drive by and saw a passenger in the backseat, who was not Trammell, fire numerous shots toward him, reload the gun, and fire more shots. Howard retrieved his own weapon and fired at the Jeep as it passed by him. The Jeep then drove away and Howard realized that he had been shot and drove his car home.

Police responded to Howard's home. Jackson, Marsh and Howard all made statements to police after being taken to separate hospitals. Police later recovered a silver Jeep Cherokee at a gas station. The night clerk told police that two men came into the gas station, purchased gas for another vehicle, and left in that vehicle, leaving

the Jeep at the station. The back window of the Jeep had been shot out, the vehicle bore bullet holes, and police observed shell casings inside.

At trial, Jackson identified Trammell and testified that he was one "hundred percent sure" that Trammell was the person who shot at him and Marsh on the night in question. Marsh also identified Trammell as the person who chased him in the Jeep.

1. Trammell contends that the evidence is insufficient to support the verdict because the State presented no physical evidence to connect him to the crime and there was no evidence that he shot Howard. For the same reasons, he contends that the trial court erred in denying his motion for a directed verdict. We disagree.

Under Georgia law, a person commits the offense of aggravated assault when that person commits an assault with a deadly weapon. OCGA § 16-5-21 (a) (2). Furthermore, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). Although

> mere presence at the scene of the commission of a crime is not sufficient
> evidence to convict one of being a party thereto, presence,
> companionship, and conduct before and after the offense are

4

circumstances from which one's participation in the criminal intent may be inferred.

(Citations and punctuation omitted.) *McWhorter v. State*, 198 Ga. App. 493 (1) (402 SE2d 60) (1991).

In considering the sufficiency of the evidence, we

do not determine the credibility of eyewitness identification testimony. Rather the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury [and] the testimony of a single witness is generally sufficient to establish a fact. Here the [victims'] testimony alone is sufficient to authorize the jury's verdict of guilty beyond a reasonable doubt.

(Citations and punctuation omitted.) *Frazier v. State*, 305 Ga. App. 274, 275 (1) (699 SE2d 747) (2010).

(a) As to the aggravated assaults against Jackson and Marsh, Trammell argues that the State presented only the uncorroborated testimony of those two victims. Jackson testified that Trammell shot at him and Marsh from the Jeep Cherokee and Marsh identified Trammell as the person chasing them. Jackson's testimony identifying Trammell as the shooter is sufficient to authorize the jury to find Trammell guilty of the aggravated assaults against Jackson and Marsh. As to the lack

5

of physical evidence, the "lack of corroboration only goes to the weight of the evidence and the credibility of the testifying witness, which is solely within the purview of the jury." (Citation and punctuation omitted.) *Manuel v. State*, 289 Ga. 383, 385 (1) (711 SE2d 676) (2011).

(b) As to the aggravated assault against Howard, there was evidence that Trammell was a passenger in the Jeep when someone else shot Howard. The jury could infer that Trammell was an active participant in Howard's shooting based on Trammell's earlier shooting of Marsh and Jackson and the fact that Howard was shot shortly thereafter, while standing outside Marsh's car, by a person riding in the same Jeep. This evidence was sufficient to authorize a jury to find Trammell guilty beyond a reasonable doubt as a party to the aggravated assault of Howard.

(c) Since the evidence supported Trammell's convictions, the trial court did not err in denying Trammell's motion for a directed verdict. See *Stratacos v. State*, 293 Ga. 401, 412 (4) (748 SE2d 828) (2013) (this Court reviews the denial of a directed verdict under the same standard used in evaluating the sufficiency of the evidence).

2. Trammell next contends that the State failed to prove venue in DeKalb County. We disagree.

6

Generally, a criminal action must be tried in the county in which the crime was committed, and the State may establish venue by whatever means of proof are available to it, including direct and circumstantial evidence. As an appellate court, we view the evidence in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted.

(Citations omitted.) *Chapman v. State*, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002). The fact that a crime is investigated by county employees is circumstantial evidence of venue. See id. at 317-318 (4) (unless clearly proven otherwise, public employees are assumed to be acting properly within their jurisdiction).

(a) Here, the evidence showed that Jackson and March were shot while parked in front of Jackson's home at 3387 River Run Trail. The shooting occurred in the street between Jackson's and his neighbor's homes. The neighbor's home was located at 3400 River Run Trail in Decatur, in DeKalb County, and across the street, about 20 steps away, from Jackson's home. Moreover, the shooting on River Run Trail was reported to DeKalb County police, and DeKalb County police officers responded to the crime scene at River Run Trail. Additionally, a DeKalb County officer interviewed Jackson's neighbor, whose home was "right there near" where police

7

recovered shell casings. Accordingly, the circumstantial evidence supported a finding that the shooting on River Run Trail occurred in DeKalb County and this evidence was sufficient to prove venue for the crimes that occurred there. See *Chapman*, supra, 275 Ga. at 317-318 (4).

(b) As to the shooting of Howard, the evidence shows that Trammell chased Marsh and Jackson as they fled to Howard's home. Howard testified that he lived at 2875 Oakvale Falls Drive in Decatur and he was shot in the cul-de-sac less than one block from his house.

DeKalb County police officers also responded to Howard's home, located in DeKalb County, and to the scene of Howard's shooting on Oakvale Avenue. Moreover, investigators with the DeKalb County Police Crime Scene Unit photographed Marsh's car and the area where Howard was shot. Thus, circumstantial evidence also shows that Howard was shot in DeKalb County and this evidence was sufficient to prove venue for this crime.[1] *Chapman*, supra, 275 Ga. at 317-318 (4).

[1] Contrary to Trammell's contention, *Thompson v. Brown*, 288 Ga. 855 (708 SE2d 270) (2011) and *Jones v. State*, 272 Ga. 900 (537 SE2d 80) (2000) do not require a different result. In *Thompson*, the defendant sold drugs to a police informant in Vidalia, which is located in two different counties. *Thompson*, supra, 288 Ga. at 855-856. Moreover, the narcotics agents who investigated the sale were part of a multi-jurisdictional task force and there was no evidence that the officers were limited to acting within a particular county. Id. at 856. In *Jones*, the only evidence of venue

3. Trammell next contends that the trial court erred in denying his motion for mistrial based on prosecutorial misconduct. We disagree.

"The decision to grant a mistrial is within the discretion of the trial court and will not be disturbed on appeal unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial." (Citation omitted.) *Jackson v. State*, 292 Ga. 685, 689 (4) (740 SE2d 609) (2013).

Here, the State was ordered not to elicit any testimony regarding Trammell's unrelated charges. Nonetheless, during the State's questioning of Jackson, the following exchange occurred:

> Q: Mr. Jackson, prior to the fist fight between yourself and the defendant, had you had any type of disagreements?
> A: No, sir, I had not.
> Q: Can you think of any reason [that] would have motivated him to come up and just swing at you like that?
> A: No, sir, other than the burglary charge that both of us had.

Trammel moved for a mistrial. The trial court denied the motion, but instructed the jury to strike the testimony from its consideration. The trial court thereafter denied

___

was testimony that the murder victim's nearby neighbor lived on Evans Drive in Fulton County. *Jones*, supra, 272 Ga. at 903-904 (3). The responding City of Atlanta police officers patrolled both Fulton and DeKalb Counties and therefore their investigation could not establish venue in Fulton County. Id. at 903 (3).

defense counsel's renewed motion for mistrial. At the close of the State's case, Trammell again renewed his mistrial motion and the trial court again denied it.

Setting aside the issue of whether the prosecutor intentionally solicited the improper comment and thus committed misconduct, the decision

> [w]hether to grant a mistrial based upon improper character evidence rests within the trial court's discretion. When a witness improperly testifies about a defendant's [additional criminal charges], thereby placing the defendant's character in evidence, curative instructions given by the trial court may be a proper and adequate remedy.

*Dukes v. State*, 273 Ga. 890, 892 (3) (b) (548 SE2d 328) (2001); see also *Pearson v. State*, 277 Ga. 813, 816 (4) (596 SE2d 582) (2004) (curative instructions adequately remedy disclosure of other crimes). The trial court instructed the jury to disregard the evidence of Trammell's other offense, and "qualified jurors under oath are presumed to follow the instructions of the trial court." *Allen v. State*, 277 Ga. 502, 504 (3) (c) (591 SE2d 784) (2004). Therefore, the trial court did not err in denying Trammell's mistrial motion.

4. In his last enumeration of error, Trammell contends that his counsel was ineffective. We disagree.

In order to prevail on a claim of ineffective assistance, [Trammell] must show that counsel's performance was deficient and that the deficient performance so prejudiced [Trammell] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [Trammell] must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations and punctuation omitted.) *Hampton v. State*, 279 Ga. 625, 626-627 (619 SE2d 616) (2005). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008).

(a) Trammell first contends that trial counsel was ineffective in failing to obtain video surveillance from the gas station where the Jeep was recovered or subpoena telephone records to show that Trammell did not call Marsh on the night in question.

11

At the hearing on Trammell's motion for new trial, defense counsel testified that prior to trial he and a defense investigator went to the gas station and learned that the surveillance video of the recovered Jeep was no longer available because the station recorded over its surveillance tapes within 24 to 48 hours. Defense counsel also testified that he did not subpoena the phone records because, after consulting with the defense investigator, they determined that the cellular provider would no longer have the records. Trammell did not show that the requested evidence was still available at the time of trial and the trial court was authorized to find credible counsel's testimony that the evidence was no longer available at the time of his investigation. See *Kilpatrick v. State*, 252 Ga. App. 900, 903 (1) (557 SE2d 460) (2001). Therefore, counsel's failure to obtain evidence that was not available does not constitute ineffective assistance.

Moreover, given Jackson's testimony identifying Trammell as the shooter, Trammell has failed to show a reasonable likelihood that, but for defense counsel's failure to present evidence regarding the phone call or the disposal of the Jeep, the outcome of the trial would have been different.

(b) Trammell also contends that his counsel was ineffective in failing to independently process the Jeep for fingerprints.

12

Trammell's counsel testified that he did not attempt to locate the Jeep because he believed that any evidence would have been contaminated and the burden of proof was on the State. Trammell's counsel also testified at the hearing on Trammell's motion for new trial that he believed the State's failure to investigate the Jeep was a good argument for the defense. Defense counsel's tactic in emphasizing the State's lack of evidence was reasonable, and Trammell fails to show ineffective assistance. See *Ray v. State*, 253 Ga. App. 626, 627 (2) (560 SE2d 54) (2002) (attorney's decision regarding what evidence to introduce is a matter of tactics and does not amount to ineffective assistance).

(c) Trammell contends that his counsel rendered ineffective assistance by failing to present sufficient evidence in mitigation at sentencing.

The failure to present mitigation evidence is not per se deficient. See *State v. Worsley*, 293 Ga. 315, 326 (4) (745 SE2d 617) (2013). Moreover, Trammell received a single 20-year sentence for his convictions on three counts of aggravated assault based on his shooting of two people multiple times and his involvement in the shooting of a third person, all within two residential neighborhoods. On this record, there is no reasonable likelihood that, but for counsel's failure to present mitigation evidence, the sentence would have been different, and Trammell has made no proffer

13

as to what mitigating evidence counsel might have presented or argued or how such evidence or argument might have changed the court's sentencing decision. See *Eskew v. State*, 309 Ga. App. 44, 51 (5) (d) (709 SE2d 893) (2011) (proffer of general mitigating evidence that defendant had a family and no violent record not sufficient to establish prejudice). Consequently, Trammell has shown no prejudice.

(d) Finally, Trammell contends that his counsel was ineffective in failing to invoke the rule of sequestration before some of the State's witnesses testified.

OCGA § 24-9-61 (2010) provides that, in all cases, "either party shall have the right to have the witnesses of the other party examined out of the hearing of each other." "The purpose of the rule of sequestration is to prevent a witness who has not testified from having his testimony affected by that of another witness." (Citation and punctuation omitted.) *Hollis v. State*, 295 Ga. App. 529, 530 (1) (672 SE2d 487) (2009). Here, counsel invoked the rule of sequestration on the second day of trial and the court instructed counsel to admonish the witnesses not to discuss their testimony with one another.

Prior to counsel's invocation of the rule, Jackson, Marsh, Howard, and a police officer testified, , and trial counsel cross-examined each of these witnesses. As to Marsh and Jackson, counsel specifically cross-examined them as to whether they

talked about the case together prior to testifying. Thus, the jury was able to evaluate the witnesses' testimony for itself. Accordingly, Trammell has failed to carry his burden of showing that he was prejudiced by his counsel's failure to invoke the rule of sequestration before these witnesses testified. Even if the rule of sequestration had been invoked and the witnesses had violated the rule, such a violation goes to the witnesses' credibility, not the admissibility of their testimony. See *Pennington v. State*, 313 Ga. App. 764, 770 (2) (c) (723 SE2d 764) (2012).

In sum, the evidence was sufficient to support the verdict, the State proved venue, the trial court did not err in denying Trammell's motion for mistrial, and Trammell was not denied effective assistance of counsel. Accordingly, his convictions are affirmed.

*Judgment affirmed. Ray, and Branch, JJ., concur.*